IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CINDY R. ADDISON, ) | Bankruptcy Case No. 07-30439 |
| ) | |
| Debtor. ) | |
| | |
| CLARA AWALT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adversary Case No. 07-3094 |
| ) | |
| CINDY R. ADDISON, ) | |
| ) | |
| Defendant. ) | |

OPINION

This matter having come before the Court for trial on a First Amended Complaint for Determination of Dischargeability of Debts filed by Plaintiff, Clara Awalt; the Court, having heard sworn testimony and arguments of counsel and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Findings of Fact

In considering the testimony and evidence presented to the Court at trial on April 14, 2008, the Court found the testimony of the Defendant, Cindy R. Addison, and the witness on her behalf to be credible. The material facts in this matter are, in pertinent part, as follows:

1. Addison-Awalt Construction, Inc., is a corporation organized under Illinois law.

2. On or about January 30, 2006, Plaintiff paid $150,000 to purchase a 49% interest in the corporation. The corporation sold the stock to Plaintiff.

3. Mary L. Awalt paid the $150,000 on behalf of Plaintiff. The corporation deposited the $150,000 in its checking account on January 31, 2006.

4. Plaintiff became a shareholder, director, and vice president of the corporation on January 30, 2006. Plaintiff and David Awalt did not read any of the documents signed by Plaintiff on January 30, 2006. Plaintiff and David Awalt did not read the Stock Purchase Agreement dated January 30, 2006.

5. Plaintiff's husband, David Awalt, handled the negotiations with Cindy R. Addison for Plaintiff to buy the stock.

6. The parties determined that Plaintiff would purchase the stock, because, as a female, it would be more compatible with the corporation maintaining its status as a Disadvantaged Business Enterprise.

7. Plaintiff's testimony is that she had no discussion directly with Defendant about buying the stock before buying it. Prior to the stock sale, Defendant discussed with Plaintiff that Plaintiff needed to come to the corporation's office to see how things worked. Defendant encouraged Plaintiff to become knowledgeable about the financial affairs of the company, since Plaintiff would be an owner.

8. Plaintiff's testimony is that her husband, David Awalt, related Defendant's representations to her, and that David Awalt told Plaintiff that Defendant wanted him to go into business with her, and he suggested that she would take Plaintiff on as a business partner, and they would be a 100% minority contractor. Plaintiff contends that this was all her husband related to her of his discussions with Defendant.

9. Defendant did not represent to Plaintiff, nor to David Awalt, that the purchase price for Plaintiff's shares would be sufficient to fully discharge all of the corporation's liabilities and to provide the corporation with sufficient operating capital to complete all existing and contemplated contracts of the corporation. All parties understood the corporation would need more financing to perform the larger jobs potentially available to the company.

10. Defendant did not represent to Plaintiff, nor to David Awalt, that Plaintiff's funds would be used exclusively for the above purposes.

11. Plaintiff, Defendant, and the corporation had no written agreement for the stock sale. Plaintiff contributed $150,000 in cash to the corporation for the stock. The corporation agreed it would hire Bernie Gillen as an estimator at $75,000 per year, and the parties agreed that the corporation would expand its operations. David Awalt and Plaintiff would be full time employees after Plaintiff acquired her stock.

12. Defendant offered on and prior to the date of purchase of the stock to give Plaintiff and her husband access to corporate records for them to make an informed decision as to whether to go forward with their stock purchase. Plaintiff and her husband declined the opportunity to do so.

13. On the date of closing, Defendant asked Plaintiff and her husband if they wanted to come to the corporate office for the purpose of reviewing the accounts payable of the corporation and issuing payment to creditors. Plaintiff and her husband declined that opportunity.

14. Defendant knew at the time that the corporation sold stock to Plaintiff that the corporation would require substantial additional sums to continue business operations. Defendant told Plaintiff and her husband that Plaintiff would have to fill our paperwork to approve a new line of credit for the corporation, including a financial statement application for Associated Bank, Certification Application for MO DOT II (for material certification), IDOT Pre-Qualification Application (for prime contractor status), Application for Bonding (financial statement required by owners), and a resume to be submitted to the Illinois Department of Transportation, Bureau of Small Business, to maintain DBE certification.

15. Plaintiff and her husband knew the corporation would need additional financing because they provided tax returns, an appraisal, a financial statement, a mortgage balance letter, and other financial information. Plaintiff and her husband failed, however, to give their full cooperation to complete the above matters.

16. Defendant did not know that the proceeds of Plaintiff's stock purchase were insufficient to make the corporation solvent. After Plaintiff contributed the funds, the

corporation was solvent. The Addison Construction, Inc. Balance Sheet dated January 31, 2006, reflects that, after contribution of the cash and equipment and payment of certain creditors of the corporation, the corporation had stockholders' equity of $19,021.

17. On and prior to Plaintiff's purchase of the stock, the corporation was qualified as a DBE. This valuable right gave the corporation an advantage in bidding for construction contracts. The DBE certification was not reflected as an asset of the corporation, nor was goodwill.

18. Plaintiff did no due diligence before she purchased the stock.

19. Plaintiff did not review any tax returns, the corporate minute book, any corporate records, or any bank statements.

20. David Awalt did no due diligence before Plaintiff purchased the stock.

21. David Awalt did not review any tax returns, the corporate minute book, any corporate records, or any bank statements.

22. Neither Plaintiff nor David Awalt consulted with an accountant or an attorney before Plaintiff bought the stock.

23. Plaintiff's testimony is that she had no personal knowledge of the discussions between her husband, David Awalt, and Defendant.

24. Plaintiff and David Awalt did not ask to see a corporate financial statement for the business prior to Plaintiff's purchase of the stock.

25. At the time of the stock purchase, Defendant did not know that the corporation was insolvent, nor was it insolvent.

26. The corporation disbursed the majority of the funds contributed by Plaintiff to creditors of the company by February 28, 2006. Plaintiff and her husband did no investigation as to the use of the funds by the corporation.

27. After Plaintiff contributed the $150,000 in cash, and equipment valued at $59,335 (subject to a loan due Plaintiff for the equipment), the corporation had equity of $19,021.

28. Plaintiff and her husband were paid wages in excess of the hours they worked for the corporation.

29. After Plaintiff acquired her interest in the corporation, the corporation successfully bid the following contracts: IDOT, $549,275; The Killian Corporation, $134,541.83; and Letting of June 16, 2006, $187,911.26.

30. The corporation could not perform these jobs because it had insufficient financing. It terminated operations in August 2006.

31. Plaintiff did not rely on any representations of Defendant, because, according to her testimony, she did not talk to Plaintiff prior to purchasing the stock.

32. Plaintiff did not, in fact, rely on any representations of Defendant in purchasing the stock.

33. Defendant made no false representations to Plaintiff or her husband.

34. Defendant did not withhold from Plaintiff or her husband material facts relating to the corporation's financial condition.

35. After Plaintiff purchased her interest in the corporation, her shares of stock were not worthless. Based on David Awalt's commitment to increase the corporation's business, Defendant hoped the corporation could expand and be successful, and she did not intend for Plaintiff to lose her investment, nor did Defendant intend to lose her investment and her own employment. Defendant did not intend to deceive Plaintiff or her husband, nor was Plaintiff or her husband deceived.

36. On May 2, 2007, Stan Smith, d/b/a Sundance Factors, brought a suit against Plaintiff, Clara Awalt, in the Third Judicial Circuit, Madison County, Illinois, Case No. 07-AR-260, related to a Guaranty Agreement ("agreement").

37. On March 31, 2008, the Court entered judgment in favor of Clara Awalt and against Stan Smith on the claim under the agreement.

38. By Plaintiff's own admission, Defendant did not represent to Plaintiff that she was <u>required</u> to sign a form to authorize Defendant to disburse funds of the corporation for

payment of wages to its employees. Plaintiff's testimony is that the agreement was presented to her.

39. Defendant told Plaintiff that the Defendant had to make payroll when Defendant gave Plaintiff the form to sign. Defendant did not say that Plaintiff was required to sign the form.

40. Defendant did not tell Plaintiff that Plaintiff needed to sign a form to authorize Defendant to disburse funds for payment of wages to employees.

41. Defendant asked Plaintiff to sign the form so that she could get payroll out to employees. The corporation spent the money loaned by Sundance Factors (the lender under the agreement) on payroll. After the loan, the corporation issued payroll checks to employees, including Plaintiff, David Awalt, and Defendant.

42. Plaintiff did not feel pressured to sign the agreement. Plaintiff's testimony is that she did not read it before she put her signature on it.

43. Plaintiff signed the agreement in a meeting with Defendant on Plaintiff's back porch.

44. Plaintiff claims that she did not know what she was signing.

45. Plaintiff claims that she did not know that she was obligating herself on an agreement as a guarantor.

46. Defendant asked Plaintiff to sign the form so Defendant could get payroll out, and Plaintiff admits that was not a false statement. If the corporation had not borrowed the money, it could not have met payroll, and would have terminated operations in April 2006, instead of August 2006.

47. Defendant did not make false representations to Plaintiff about the guaranty.

48. Plaintiff did not rely on false representations of Defendant regarding the guaranty.

Conclusions of Law

Count I of the Plaintiff's Amended Complaint seeks to have debt owed to the Plaintiff by the Defendant determined to be non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides in part, as follows:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by -
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

In order to prove a case under this provision, courts have traditionally required a plaintiff to prove that: (i) the debtor made false statements which he knew to be false, or which were made with such reckless disregard for the truth as to constitute willful misrepresentations; (ii) the debtor possessed the requisite *scienter*, i.e. he actually intended to deceive the plaintiff; and (iii) to its detriment, the plaintiff justifiably relied on the representations. Field v. Mans, 516 U.S. 59, 74-75, 116 S.Ct. 437, 466 (1995); In re Mayer, 51 F.3d 670, 673 (7th Cir. 1995), *cert. denied* 116 S.Ct. 563 (1995); In re Sheridan, 57 F.3d 627, 635 (7th Cir. 1995); In re Scarlata, 979 F.2d 521, 525 (7th Cir. 1992). A plaintiff bears the burden of proof and must prove each element by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286-87 (1991). Exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor. Scarlata, supra at 524.

In analyzing the case at bar under the elements of § 523(a)(2)(A), the Court finds that the Plaintiff had failed to prove any of the required elements. The credible facts presented through testimony and documentary evidence at trial reveal that the Defendant did not make false statements, nor did the Defendant possess the requisite *scienter* necessary to establish a case under § 523(a)(2)(A). The facts simply do not establish that the Defendant intended to deceive the Plaintiff. Furthermore, the Court must conclude that the Plaintiff failed to

establish any justifiable reliance on representations made by the Defendant. The facts are clear that neither the Plaintiff nor her husband made any attempt to investigate the financial status of the subject corporation prior to the stock purchase, even though it is apparent that they were free to do so. Thus, the Court must conclude that the indebtedness due from Defendant to Plaintiff is dischargeable in the Defendant's Chapter 7 bankruptcy proceeding under the provisions of 11 U.S.C. § 523(a)(2)(A).

Under Count II of the Plaintiff's Amended Complaint, Plaintiff seeks to have the indebtedness due from Defendant declared non-dischargeable pursuant to the provisions of 11 U.S.C. § 523(a)(4). Section 523(a)(4) provides that:

> (a)   A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .
>
>    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

In order to prevail under the fiduciary fraud portion of the statute, a creditor must prove that: (1) a fiduciary relationship existed between creditor and debtor; (2) fraud or defalcation was committed by the debtor in the course of that relationship. In re Monroe, 304 B.R. 349 (Bankr. N.D. Ill. 2004).

Whether a debtor is a fiduciary under § 523(a)(4) is a question of federal law. In re Frain, 230 F.3d 1014, 1017 (7th Cir. 2000). The federal definition of fiduciary for this purpose is narrower than under state law. The existence of the trust must predate the breach. The equitable remedy of a constructive trust or resulting trust is not included within the term since the trust obligations do not exist until the wrong is committed. Id.; Matter of Marchiando, 13 F.3d 1111, 1115 (7th Cir. 1994). Even if a trust is nominally in existence, but where no real duties of a fiduciary character are imposed in advance of the breach, the absence of such preexisting duties takes the trust outside of the scope of § 523(a)(4). Marchiando, supra, at 1116. A fiduciary relation that imposes real duties in advance of the breach is almost always characterized by a difference in knowledge or power between

fiduciary and principal, which gives the fiduciary a position of ascendancy over the principal. Id. The elements of § 523(a)(4) must be proven by a preponderance of the evidence. See: Grogan v. Garner, supra, at 286.

In considering the instant case, under the elements of § 523(a)(4), the Court finds that the Plaintiff has, once again, failed to prove the subject indebtedness to be non-dischargeable by a preponderance of the evidence. The facts, as adduced at trial, fail to show a fiduciary relationship in that both the Defendant and Plaintiff had access to the same facts and knowledge, and there was no showing that the Defendant was in a position of ascendancy over the Plaintiff. Even if, for the sake of argument, the Court was to find that there was a fiduciary relationship, the facts of this case do not show fraud or defalcation on the part of the Defendant in relationship to the Plaintiff. The Plaintiff was given every opportunity to become acquainted with the financial condition of the subject corporate entity, yet failed to do so. At the end of the day, a review of the facts of this case leads the Court to conclude that this was merely a business deal gone bad and that the failure to succeed was in no way caused by any fraud on the part of the Defendant. As such, the Court must conclude that the indebtedness due from Defendant to Plaintiff is dischargeable in the Defendant's Chapter 7 bankruptcy proceeding under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4).

ENTERED: May  1 , 2008.

/s/Gerald D. Fines
GERALD D. FINES
United States Bankruptcy Judge